

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

September 18, 1953

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. S-100

Re: Several questions respecting the
maximum travel expense allow-
ance of officers and employees
of the Texas Employment Com-
mission.

Dear Mr. Calvert:

We refer to your request for our opinion on the following
questions concerning the general appropriations act now in effect:

"1. The applicability of the expense account
requirements in Section 8j, Article VI, House Bill
111 (now Chapter 81), Acts 53rd Legislature, 1953,
to officers and employees of Texas Employment Com-
mission.

"2. The applicability of Section 8k, Article
VI, House Bill 111 (now Chapter 81), Acts 53rd Leg-
islature, 1953, to officers and employees of Texas
Employment Commission as respects the reimburse-
ment limitations there fixed.

"3. The applicability of Section 8k, Article
VI, House Bill 111 (now Chapter 81), Acts 53rd Leg-
islature, 1953, to officers and employees of Texas
Employment Commission as respects the require-
ment for receipts.

"4. The legality of reimbursing laundry,
cleaning and pressing charges, and tips expended
by Texas Employment Commission officers and
employees while traveling in the discharge of their
duties for the State of Texas."

In a recent opinion we held that federal funds received by
this State to cover administrative expenses of the Texas Employment
Commission (the Unemployment Compensation Administration Fund) are
in the State Treasury within the meaning of Article VIII, Section 6 of the
Texas Constitution and must be appropriated by the Texas Legislature in

order to be available for use. Att'y Gen. Op. MS-13 (1953). Subsequently, the Fifty-third Legislature appropriated those funds for the present biennium. All of your questions concern what terms or limitations were imposed by that Legislature. In substance you ask whether or not the Commission is subject to the travel expense reimbursement limitations imposed by Chapter 81 on most State agencies by virtue of the general riders pertaining to travel expense contained in Article VI.

There can be no doubt about the applicability of Article VI, Section 8 travel restrictions to most State agencies. This follows from the general terminology of Section 8 ("These provisions with exceptions shall apply to all officers and employees who are reimbursed for traveling expenses from money appropriated in this act"). It also follows from the general law directive contained in Article 6823, Vernon's Civil Statutes ("The traveling and other necessary expenses incurred by the various officers, assistants, deputies, clerks and other employees in the various departments, institutions, boards, commissions or other subdivisions of the State Government, in the active discharge of their duties shall be such as are specifically fixed and appropriated in the General Appropriation Bills providing for the expenses of the State Government from year to year").

But, in our opinion, the special rider accompanying the appropriation of the Unemployment Compensation Administration Fund in Chapter 81 makes travel expense reimbursement paid from that appropriation one of the "exceptions" to Article VI, Section 8. The appropriation and special rider referred to are as follows:

"All moneys granted to this State by the Federal Government for the administration of the Unemployment Compensation Act or which are now on deposit to the credit of any funds maintained by the State Treasurer for the Texas Employment Commission and any moneys received for the credit of such funds are hereby appropriated for the purposes authorized by the provisions of the Texas Unemployment Compensation Act and/or for the purposes for which such moneys were granted.

"In order to comply and conform with the terms of Federal laws and regulations and standards under which such moneys are granted, notwithstanding any other provisions of this Act, moneys granted for administration shall be expended in accordance with the terms of the Texas Unemployment Compensation Act, the standards of the Bureau of Employment Security and/or United States Employment Service or successors, and the rules or regulations adopted by the Texas Employment Commission to meet such standards; out of State travel expense paid solely from Federal grants and made in accordance with the Federal standards as being necessary for proper administration

of the Unemployment Compensation Act shall not require approval by the Attorney General; travel expense and salaries of the employees of the Texas Employment Commission and Members of the Commission shall be paid in accordance with agreements made between the Commission, the Bureau of Employment Security and/or the United States Employment Service or successors, which agreements shall provide for salaries within the limits herein prescribed and in conformity with Federal standards of a Merit System for Personnel Administration.  Prior to the submission of any budget or request for funds to any Federal agency such budget or request shall be submitted to and filed with the Governor.  It is provided further that if any of the requirements of this Act are contrary to any of the terms of Federal legislation or regulations under which moneys are granted to the Texas Employment Commission, such requirements may be suspended with the written consent and approval of the Governor. . . ."  Sec. 1, Art. III, Ch. 81, Acts 53rd Leg., 1953, p. 127 at pp. 200-201.  (Emphasis added).

In referring to the effect of various appropriation bill riders we have said that by ordinary rules of construction "general provisions will be governed to the extent of conflict by special provisions, and that special provisions in each article will be governed to the extent of conflict by 'extra-special' provisions appearing in the body of the article in connection with particular appropriations."  Att'y Gen. Op. MS-06, p. 17 (1953).

Thus, it is the opinion of this office that if the rules or regulations adopted by the Texas Employment Commission to govern reimbursement for travel expense are "in accordance" with agreements made between the Commission, the Bureau of Employment Security and/or the United States Employment Service or successors, and have been approved by the appropriate federal authority as complying with the terms of Federal legislation or regulations under which moneys are granted to the Commission, then such rules are controlling on all matters covered by them, and to that extent the general travel expense regulations of Article VI, Section 8 do not apply.*

The general law creating and governing the employment security system administered by the Commission has never been substantially

* If taken literally the language of the final sentence quoted from the Texas Employment Commission's special rider would furnish an argument against the conclusion we reach.  But a literal construction of this sentence would render it entirely nugatory because the Governor's power to "suspend" legislation can be constitutionally exercised only by veto within the prescribed time limits.  Tex. Const. Art. I, Sec. 28; Art. IV, sec. 14.

altered. 42 U.S.C.A. § § 502, 503; Article 5221b-1 et seq., V.C.S. After consideration of these statutes this office stated in Opinion V-427 (1947) that these provisions

> " . . . reveal an unmistakeable intent on the part of Congress and the Texas Legislature that all moneys received from the Federal Government under Title III of the Social Security Act can be expended only in the amounts and in accordance with the standards of the Social Security Administration and the rules and regulations adopted by the Commission to meet such standards.

> " . . .

> "Under these cooperative endeavors the several Federal Agencies give to the State the standards for the State to follow in formulating the rules and regulations relative to various systems. After the State has prepared its rules and regulations, these are submitted to the Federal Agencies for approval, and once they are approved they cannot be altered or changed without first securing the approval of the Federal Agencies. (Emphasis added).

> "These approved plans, as they are called, are very detailed and cover every phase of the administration of the acts and the expenditures that are made in connection therewith."

In a later opinion of this office, Opinion V-504 (1948), we acknowledged the fact, well illustrated by the questions raised in your opinion request, that there are many instances of

> " . . . apparent conflict in State and Federal laws and regulations which apply to this 'State Agency' financed through Federal appropriations."

But in the same opinion this office reiterated a position consistently followed in our prior opinions, namely, that

> "As pointed out in V-427 the terms and conditions of the Federal Statutes are recognized and agreed to by our State Statutes. Therefore, there is no alternative except to give primary authority to the Federal laws and regulations applicable just as the Texas Legislature has done." (Emphasis added).

In Opinion O-3737 (1941) we held that funds supplied by the United States to the Unemployment Compensation Administration Fund could be disbursed to purchase supplies and equipment according to

regulations approved by the Social Security Board rather than according to Section 2 of the then-current departmental appropriation act and other State laws which provided a different method of procurement for State agencies.

In Opinion 0-5524 (1943) it was held that the Texas Unemployment Compensation Commission was not affected or limited by a general statute passed in 1943 which specified a particular method of procurement of rental space which was mandatory on other State agencies and departments.

And in Opinion V-504, mentioned above, we held: (1) that irrespective of a specific requirement to the contrary in the then-current departmental appropriation act, it was not necessary that the Legislative Audit Committee approve the Texas Employment Commission's budget for the expenditure of its administrative costs which are paid from federal funds; and (2) in re-affirmance of Opinions 0-3737 and 0-5524, that it was not necessary for the Texas Employment Commission to procure supplies and equipment or to make rental contracts through the State Board of Control as required of State agencies generally.

Your letter contains excerpts from certain regulations or standards promulgated by the Bureau of Employment Security as well as your statement that "In Opinions V-577, V-1250 and others, you have held that such funds [granted the State for administration expense] become State funds and are subject to State laws, rulings, and regulations."

So far as the federal standards are concerned, we understand your letter to suggest that this office is authorized to interpret these standards and that this office is empowered to hold that Commission regulations do not conform thereto, i.e., that this office may disapprove Commission regulations. But the fact is that we possess no such authority or power. The interpretation of these standards, as well as their promulgation, is an exclusive function of federal power. Once the appropriate federal authority has approved a given regulation of the Texas Employment Commission, such a regulation must, under the federal and Texas statutes, be recognized as "primary authority," not to "be altered or changed without first securing the approval of the Federal Agencies." Att'y Gen. Op. Nos. V-504 (1948) and V-427 (1947). This has been our construction of the law heretofore. Until the statutes are changed, we are convinced that we must maintain this view toward their meaning.

In regard to the opinions you mention, we do not agree with your interpretation. Neither of those opinions holds that federal moneys deposited in the State Treasury become "State funds" in the sense that State law and only State law thereafter governs their disposition. Opinion V-577 (1948) holds that a particular federal fund granted to the State Health Department under 42 U.S.C.A., Sec. 246 was within the scope of the Employees Retirement System Act and could be used to match employee

contributions under the Act. But the opinion points out that all questions relating to whether or not the federal purposes of the grant would prevent its use for retirement act matching purposes were removed by specific approval of such a use from the Surgeon General, the supervising federal budget authority for such grants.

In Opinion V-1250 (1951) we held that certain federal funds granted to the Commission for the Blind and to the State Health Department could be received and taken into account in the funds of the State Treasury, and that said funds were appropriated by the general appropriation act to the said State agencies for the purposes for which the allocations were made by the federal government. The language in the opinion stating that the funds could be "expended under the provisions of the general appropriation bill" meant only that provisions in the general appropriation bill had made an appropriation authorizing their expenditure. The opinion does not hold or even suggest that after being deposited the funds are subject to the primary authority of State law if the State law and federal law or regulations conflict. To the contrary, Opinion V-1250 makes it clear that the particular federal grant to the State Health Department should be expended, along with State funds appropriated to match the grant, in strict accordance with standards incorporated into a personnel plan approved not only by the State Health Department but also by two federal agencies.

## SUMMARY

The expense account requirements and limitations of Sections 8j and 8k, Article VI, Chapter 81, Acts 53rd Legislature, 1953, do not apply to officers and employees of the Texas Employment Commission if the subjects dealt with in these sections are covered by travel expense reimbursement regulations of the Commission which have been approved by the proper federal agency under 42 U.S.C.A., Sections 502, 503. It is legal to reimburse laundry, cleaning and pressing charges, and tips expended by Texas Employment Commission officers and employees if such reimbursement is authorized by the properly approved regulations of the Commission.

APPROVED:

Mary K. Wall
Reviewer

Robert S. Trotti
First Assistant

John Ben Shepperd
Attorney General

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By *Phillip Robinson*
Phillip Robinson
Assistant